Good morning, Your Honors. May it please the Court, my name is Paul Ryerson and I represent RJ Reynolds. I'd like to reserve three minutes of my time for rebuttal. All right, if you'll watch the clock and I'll also try to help you. Thank you. This case is about smoking in the Philippines. The plaintiff, Mr. Tomazon, lived in the Philippines for the first 65 years of his life and filed this lawsuit one week after he arrived in the United States. He smoked Salem cigarettes in the Philippines for his entire adult life based upon advertising and marketing that he was exposed to in the Philippines. He claims that he developed congestive chronic obstructive pulmonary disease as a result of smoking Salem cigarettes, which was first diagnosed while he was still living in the Philippines. He claims that Reynolds failed to warn consumers in the Philippines about the health risks of smoking. Specifically, he claims that Reynolds manipulated the political and legislative process in the Philippines to delay health warnings on cigarette packs in the Philippines. Is all this relevant to personal jurisdiction or to foreign non-convenience? I believe, Your Honor, it goes to both, both to the reasonableness test on personal jurisdiction and certainly to foreign non-convenience. He claims that Reynolds misused the justice system in the Philippines to delay health warnings even after they were ultimately required. And he claims that Reynolds created a trade association in the Philippines, the Philippine Tobacco Institute, to mislead the public about the health risks of smoking. Mr. Tuazon is himself a lawyer in the Philippines, and he acknowledges that his claims are sufficiently bound up in the Philippines that he asserts all of his claims under Philippine law. But Mr. Tuazon chose not to sue in the Philippines, and he's quite candid in his deposition as to why that was so. He said that he feared any award in the Philippines would be niggardly or ridiculously low. The parties agree that this case is not about anything that happened in Washington State. Mr. Tuazon concedes to the legal resident of Washington State at this point. But, yeah, I think there's no doubt that it's not a specific jurisdiction case. It has to be. And so turning to jurisdiction, it has to be analyzed under general jurisdiction. Absolutely. Everybody agrees on that. Everybody agrees that this is a general jurisdiction case. The district court denied Reynolds' motion to dismiss but certified for this Court's review. And the case, therefore, I believe presents two issues for this Court. First, is Reynolds subject to general jurisdiction in the State of Washington? In other words, are its contacts so extensive and so pervasive that Reynolds can be sued in Washington, regardless of whether its Washington contacts have anything to do with the cause of action that's being brought? And in the overall circumstances of the case, is the exercise of jurisdiction, of personal jurisdiction, reasonable? And the second issue, which this Court may decide it needn't get to, is whether the district court should have dismissed this case in any event on convenience grounds. Reynolds' contacts with the State of Washington are similar to its contacts in most other states. And we submit do not support general jurisdiction. I guess your position would be, short of its corporate headquarters or manufacturing plants, that you can't get general jurisdiction over Reynolds anywhere in the United States? Well, I'm not sure exactly where the line is, Your Honor, and I don't think the Supreme Court has ever indicated exactly where the line is. Our position is certainly that where there is only a small local sales presence, there is not general jurisdiction. Under international shoe, the test is whether Reynolds' activities in Washington are so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities. Now, there is no question that Reynolds has substantial sales of cigarettes to wholesale customers in Washington, as it does in every state. But if sales volume alone were enough for general jurisdiction, then virtually every Fortune 500 company would be subject to general jurisdiction in every state. We submit sales volume alone is not enough, nor is having a small local sales force enough. Now, as this Court said in the Congolium case, no court has ever held that the maintenance of even a substantial sales force within the state is a sufficient contact to assert jurisdiction in an unrelated cause of action. Other than... How many people do you have here in Washington? I'm sorry, Your Honor? How many people do you have in the state of Washington? Reynolds has a small sales office with six or seven full-time employees, and in addition employs approximately 30 to 33 sales personnel who work out of their homes to call on local retail accounts. So you have upwards of 40 people... Approximately, yes. Okay. That represents... And $150 to $200 million in sales annually? Correct. Okay. That's correct. But Reynolds obviously is not incorporated in Washington, not headquartered here, has no manufacturing facilities here. But if that were the test, you could only be sued where you're incorporated or headquartered, and that's not actually the test. I mean, I've never seen a case that says that. What I was looking for is cases where district court found general jurisdiction and it was overturned by circuit court, and I was hard-pressed to find those cases. Where it was overturned by the circuit court. Right. Like this situation, in other words. Yeah. There are certainly circuit court cases that sustain a determination of no general jurisdiction. Correct. There are circumstances where companies have far more extensive contacts than in this instance, and I'm thinking of some of the pharmaceutical cases, such as the Glader case that we saw, I don't know, I believe, in the First Circuit. The Fourth Circuit case, the Nichols case, similarly, where there were a number of sales representatives and substantial sales of pharmaceuticals in the state of Maryland. Thinking of the Fifth Circuit, which upheld a finding, not on contacts basis, but on a reasonable basis, of no general jurisdiction against Wal-Mart in the Follett case, where Wal-Mart had 264 large retail stores in the state of Texas, and the Fifth Circuit said, based on reasonableness, no general jurisdiction. And quite apart from the contacts issue, the exercise of general jurisdiction in this case is simply unreasonable. The Supreme Court set forth in the Asahi case a number of factors, and I'm sure this Court is familiar with them, that must be satisfied in order for the exercise of jurisdiction to be reasonable. And this Court, in the Amoco Egypt Oil case, said that Asahi's requirements apply not only to specific jurisdiction cases, but also to general jurisdiction cases. Well, here the district court did not address the Asahi factors. If it had done so, if it had considered the Republic of the Philippines, we submit a different result would have been required. Again. I think that maybe it's inconvenient, but the Court, although didn't use the term Asahi in reference to the case, did address the reasonableness as a second half of the jurisdictional analysis, didn't it? Yes, Judge McKeown. The Court did address reasonableness somewhat reluctantly based on a Wisconsin State court decision. But the Court did not specifically in the context of its personal jurisdiction decision consider the interests of the Republic of the Philippines. And again, I would remind the Court of what Plaintiff is alleging here. Plaintiff is alleging that Reynolds delayed mandatory health warnings in the Philippines for nearly 30 years after they were required in the United States. Plaintiff is alleging that Reynolds misused the legal system in the Philippines in order to further delay the effective date of health warnings legislation. Plaintiff is alleging... But he's also alleging a worldwide conspiracy, isn't he? Plaintiff is alleging a worldwide conspiracy. That is correct. Plaintiff alleges injury in the Philippines, conduct in the Philippines, and conduct in the United Kingdom and elsewhere, but no conduct in the State of Washington. But these sorts of issues, we submit, are more appropriately decided in the Philippines by Filipinos. Let me go back to your point about a district court. We have an odd circumstance. The Supreme Court has a five-factor test, and somehow we added two more somewhere along the way. So it's a seven-factor test. If we were to determine that the district court really didn't toe the line along that, because it's a de novo review, is your position that we should remand it to the district court or that it would be appropriate to be decided on appeal? I believe, Your Honor, it would be appropriate to decide it on appeal, although obviously this Court has broad discretion in the remedies that it orders, and it could remand to the district court for further consideration. Now, I think another point that I would like to make is that apart from failing to consider the interests of the Philippines, the district court failed to consider the interests of other states. As Judge Cudahy has remarked, plaintiff here alleges an international conspiracy that has taken place for decades. If such a conspiracy occurred, I would submit it's of more interest to the states where Reynolds is incorporated or headquartered than it is to the State of Washington where Reynolds has no contacts that have anything to do with the Philippines and no contacts that have anything to do with sales outside the Washington area. You know, as the Supreme Court said in the Worldwide Volkswagen case, that jurisdictional limitations are more than a guarantee of immunity from inconvenient or distant litigation. There are consequences of the territorial limitations on the power of the respective states. Basically, if this case can proceed on a general jurisdiction basis in Washington, it's really hard to see how any Fortune 500 company would be not subject to general jurisdiction in essentially every State. We don't think that's the law. The Supreme Court has certainly never said that. I don't believe this Court has ever said that. So what do you think is the practical dividing line? Obviously, a clean slate would be no sales representatives and de minimis sales, so that's an easy case. But if you have a couple hundred million and 40 people and that's not enough, then where on this slippery slope is it enough? You don't have to have a manufacturing plant, I assume. The honest answer to that question, Judge McKeown, is I don't know where the line is. The Supreme Court, since International Shoe, has addressed the issue of general jurisdiction twice. Once, in the Perkins case, it said that if you have a de facto headquarters in the other State, then you have general jurisdiction. Easy case. Easy case. And it said in the Helicopteros case that if you have a one-shot deal, you sell helicopters, provide a little training and so forth, have a few meetings. That's not general jurisdiction. Where in between is the answer? I don't know. This Court has said that there are not cases that are factually as simple, I believe, in this Court as in some of the cases I mentioned, the Glader case and so forth. But this Court in Scott v. Breland said that extensive sales of record music recordings were not enough to subject the Oak Ridge Boys to personal jurisdiction in California. This Court said in the Congolium case, and I quoted, that merely having a sales presence in State is not enough. Although, in that case, it was an independent sales agent. That was not the situation in some of the other cases that I mentioned. So I don't know. I don't know where the line is. The line is not, I would submit, based on a number of cases, and including two cases that deal with tobacco marketing specifically. The People's Tobacco case, which I would hesitate to cite to this Court because it's a 1918 case, except that it was cited in International, too. And I think the marketing practices have changed a little bit in 90 years. But they're not that different. The facts there appear to be somewhat similar to the facts here. And there's a State case that we cite in our brief. The State of Rio de Janeiro, Brazil, sued Reynolds and the other major tobacco manufacturers in State court in Texas, which found on the reasonableness test of the contacts, but on reasonableness, that there was no personal jurisdiction for a smoking and health lawsuit by the State of Rio de Janeiro. The only difference between that case and this case, frankly, is Mr. Chuazon filed this a week after he arrived. He was not still in the Philippines. I'd just like to turn briefly, if I may, to the foreign nonconvenience issue, which, again, the Court may not need to reach, depending on its resolution of the jurisdiction issue. Just one minute. This case really has everything to do with the Philippines and nothing to do with Washington. Let me just ask to make the record clear. Have you somewhere in the papers agreed to an unequivocal submission of jurisdiction in the Philippines? Not you, but Reynolds. Reynolds, in his briefs in this Court, has made that clear, that it would agree to a reasonable, conditional. Reasonable, conditional. Reasonable. And I thought it made it clear in the district court in its reply brief that it did not file before the Court's decision a formal waiver of jurisdictional defenses or consent to agree, but it clearly indicated in its reply brief in the district court that it had the power to impose reasonable conditions, including a waiver of personal jurisdiction, and it requested specifically that if the Court did that, that it preserve Reynolds' statute of limitations defense based upon Mr. Tuazon's admitting his deposition that he'd known about his cause of action in the Philippines for 10 or 15 years before he came to the United States. I see my time is up. I'm going to reserve. Unless there are further questions, I'll rest at this time. Thank you. May it please the Court. I'm John Ferguson from Bainbridge Island, appearing on behalf of Mr. Tuazon, who was the plaintiff below and the respondent in this Court. Reynolds conveniently glides over the nature of the conspiracy allegations made by Mr. Tuazon in this case. They said that we alleged conduct occurring in the Philippines and conduct occurring in the United Kingdom. In fact, what Mr. Tuazon alleges is a conspiracy beginning in 1953 centered in the United States and conducted in the United States for more than 40 years. And that that conspiracy was internationalized by the American conspirators through their affiliates and their captive companies in other countries throughout the world, including the Philippines. So let's be clear that the conspiracy we're talking about is a U.S. conspiracy. It happened here. I'd ask the Court to take judicial notice that all 50 states in the United States a major tobacco manufacturers in the United States, including Reynolds, based on their participation in a 50-year-long conspiracy centered in the United States. The question of general jurisdiction, and Judge McKeown asked a good question about this, I think, where's the dividing line? It's a case-by-case analysis. There is no clear, bright line where we can say on one side general jurisdiction exists. On the other side, it doesn't exist. I think the guiding principle for the Court is does the defendant in the action derive substantial benefit from its presence in the state where jurisdiction is attempted to be asserted? Does it get substantial benefits from its presence? Does Reynolds derive substantial benefit from its presence in the state of Washington? The record that was submitted to this Court and that was submitted below demonstrates that Reynolds has been licensed to do business in Washington continuously since at least 1940. I think I have that right. Sometime in the 40s, and I believe it was 1940. It has billions of dollars of sales over periods of four or five years. It sells hundreds of millions of cigarettes in the state of Washington each year. It apparently has a very efficient sales organization, 45 full-time employees. We don't know how many part-time employees they have. They may have none. The question, I think, was asked in discovery below and was not answered, but they may have some. But they're here. They make a lot of money in Washington. They have a big impact on this state. They pay a lot of taxes to the state of Washington. They derive benefits in return. They benefit by being able to sell those hundreds of millions of cigarettes. They are the market share leader in Washington, which is not their position nationally. So they sell more cigarettes in the state of Washington than any other company. Their business enjoys all the privileges and pleasures of a business permitted to do business in the state of Washington. Fire protection, police protection, protection of the laws, if something goes awry in their relationship with their customers in the state of Washington. So they have all of those benefits. And when the court is doing a case-by-case analysis, as I think it has to do, in deciding if there's general jurisdiction, then it needs to look at, as the courts say in the Supreme Court, whether these are substantial continuing contacts of such a nature that it would not offend traditional notions of fair play to subject them to jurisdiction in Washington. Now, I don't know about counsel's suggestion that virtually every Fortune 500 corporation would be subject to general jurisdiction in every state. I suppose that's possible. If every Fortune 500 corporation in the United States has a substantial continuous presence in every state, then I think it's possible that in those cases general jurisdiction might be asserted. But that's not this case. Mr. Twazin has not sued all Fortune 500 companies. He sued R.J. Reynolds. And Reynolds never made an unequivocal statement to the court below that it would voluntarily submit to the jurisdiction of the courts of the Philippines. That arose in the briefing to this court. So they kind of played this game with the district court where they invited the district court to make an order suggesting that they might have to do that. But they never said without equivocation, yes, Reynolds will agree to jurisdiction in the Philippines, and yes, Reynolds will agree to pay any judgment that might be entered in the Philippines. Mr. Twazin believes that these substantial contacts of Reynolds are more than satisfactory. To meet the requirements of due process and to establish general jurisdiction over Reynolds in the state of Washington. The standard of review for this court, as the court knows, and Reynolds and Mr. Twazin both have said in their briefs, is whether the trial court committed clear error. The district court did not have an evidentiary hearing. This motion was heard without argument. As a result, the district court was in the position where all it had to do was find that plaintiff had made a prima facie showing that there was sufficient basis for the exercise of general jurisdiction over Reynolds. Reynolds' response is to quibble, to say, well, this isn't really enough. We don't have as many employees in the state of Washington as Taco Time had. Look at Walmart. It's a big corporation. And in Texas, general jurisdiction wasn't found over Walmart. One of the interesting things about the Walmart case, by the way, if I'm recalling it correctly, is it arose out of a sale that occurred in Arkansas. And I'm not sure which district this case went to in Texas, but if it was in Texarkana, half that town is in Arkansas and half of it is in Texas. So it would not have been a difficult matter, one would think, for the plaintiff to select Arkansas to file that case rather than Texas. I also wanted to mention the Rio de Janeiro case. The Rio case was filed. I don't remember. Counsel says it was in state court. That may be. I'm not sure if it was state court or federal court. Ultimately, it made its way to federal court. And I recall one of the judges who was dealing with it said there isn't even a Bolivian restaurant in this district in Texas. Bolivia had no reason to be in Texas. The tobacco companies that were being sued certainly had a lot of contacts with Texas, but Rio de Janeiro didn't have any. And I said Bolivian. I meant Brazilian. Excuse me. Rio just didn't have any contacts with Texas. There was no reason for it to be there. It was an alien plaintiff coming there from South America to Texas to try and find a favorable forum to pursue this case against the tobacco manufacturers. In this case, Mr. Chawazin is a legal resident of the United States. He is a citizen of the state of Washington, and he filed this case in his home forum. He wasn't out forum shopping and down in Brownsville, Texas, to find a court that was favorable to plaintiffs. He went to his home district to bring his action against rentals and to suggest that he needs to go back to the Philippines where he no longer lives. He owns some property there, but he doesn't visit there regularly. He doesn't live there. He lives in Renton, Washington, to suggest that he has to go back to the Philippines to sue a company that is not subject to jurisdiction in the Philippines is preposterous. This company does an enormous amount of business in the state of Washington. It derives enormous benefits from being permitted the privilege of doing business in Washington. It would not offend traditional notions of fair play and substantial justice to assert general jurisdiction over it in the United States District Court for the Western District of Washington. The two tests, Reynolds argues in its briefing that the district court used the Washington test to determine whether general jurisdiction applied or could be applied in this case over Reynolds. And I've attempted to compare that Washington test with the Asahi test, and they're really very similar. The Washington test, which comes from the Crow's case, I think it's pronounced C-R-O-S-E, discusses the interest of the state in providing a forum to its citizens. Mr. Twazin is a Washington citizen. Washington has an interest in providing a forum to him. Secondly, the ease with which plaintiff can gain access to another forum. I suppose it's possible that Mr. Twazin could get in his car and drive to North Carolina and file a case down there, but the easiest place for him to bring his action is in the district where he lives, and that's the Western District of Washington. The amount, kind, and continuity of activities in the state of Washington. As I've already suggested to the Court, Reynolds has done business in this state for at least, well, since 1940, however many years it is. I've been in trial for the last two weeks, and I'm going back tomorrow, so I'm losing track of some of these days, for a substantial period of time. Those activities have been continuous. They have been massive in scale, both in monetary terms, in terms of the numbers of consumers they do business with, in terms of the number of units, cigarettes or cigarette packs or cigarette cartons, however they wish to characterize it, that they sell in the state of Washington. Reynolds has made no showing that there's been any interruption in that, that there's been substantial periods where they weren't here, periods of time when they weren't making enormous sales and making enormous profits for the state. So their presence has been continuous. The economic benefits to the defendant from its activities we've already discussed. That's another one of Washington's elements to establish general jurisdiction. And finally, Washington looks at whether it is foreseeable to a party such as Reynolds that its products will hurt someone. And under the Washington test, it doesn't have to be that they will hurt someone in Washington. It has to be foreseeable to Reynolds that its products will hurt someone somewhere. And if Reynolds does substantial business in a state, let's pick another state, let's say Idaho, Reynolds does substantial business in the state of Idaho, and we'll presume that for the sake of my argument, I don't know if they do or not, but let's presume that they do. And a citizen from Latvia legally emigrates to the United States and takes up residence in Boise, then determines, or even before the citizen got here, determined that he or she has a disease, chronic obstructive pulmonary disease, by the way, which Mr. Twoson has his emphasis on. That's what we commonly call it. Let's imagine that this Latvian in Idaho shows up with lung cancer and believes that Reynolds is responsible for that. Now, does that Latvian person who has now become a citizen of the state of Idaho  I've been there. I'm not sure I'd want to go back to Latvia to file a case. Does he have to go to North Carolina to file a case? The answer is no. If the contacts of Reynolds in Idaho are substantial, continuous, ongoing, if Reynolds derives substantial benefit from its presence in Idaho, then the Latvian who has become a citizen of the state of Idaho should be entitled to pursue his or her claim in his or her own home district, the District of Idaho. Since counsel, well, let me address the Asahi factors because they are slightly different. And it appeared to me that without referring to Asahi, the district court was attempting to reconcile Asahi with Washington's requirements, and they are not dissimilar. The first two Washington requirements for general jurisdiction, interest of the state in providing a forum to its citizen and the ease with which the plaintiff can gain access to another forum, seem to be consolidated in the first element in Asahi, which is the interest of the state and the plaintiff's interest in obtaining relief. So those, the first two Washington factors and the first Asahi factor, appear to me to be identical. The second thing that Asahi does is looks at the burden on the defendant of having to defend its case in Washington state. Reynolds has taken advantage of the courts in Washington state and it has filed lawsuits in Washington state. One of those is recited in the record where it filed a challenge to Washington tax laws, I believe. My guess, and it's simply a guess, it certainly would be difficult for Mr. Chwazin and for me to move to the Philippines to try this case. I kind of suspect it might be sort of difficult for Reynolds to pack up and move to the Philippines and try the case. I would suggest to this court, and I think the district court, in her analysis of the reasonableness of assertion of general jurisdiction, recognized that Seattle is a more convenient forum, both for defendant and plaintiff, than is the Republic of the Philippines. Counsel mentioned the Asahi factor, the interstate judicial system's interest in the most efficient resolution of controversies. And again, I suggest that the district court dealt with this in her discussion of reasonableness. The most efficient place to resolve this controversy is where the plaintiff lives, where the plaintiff's physicians are, where the impacts of the plaintiff's illness as it progresses are going to be felt, where the loss of his ability to economically contribute to the economy of the state is going to be felt. That's all here. That's all in Washington. That does beg the question, though, of the much broader allegations of the conspiracy, which fairly dominate the complaint, doesn't it? I mean, the conspiracy is one that may have been by a U.S. corporation, but apparently it took place in the Philippines with respect to Philippine consumers and a Philippine, I don't know if they're appropriately termed a supplier or representative. Yeah, it was a licensee. Licensee. Fortune Tobacco Company. Now, plaintiff's allegation, Your Honor, is that the conspiracy is centered in the United States, that the major United States manufacturers, and they're identified in the complaint, together with a couple of British manufacturers of cigarette products, began starting in 1953 to conspire in the United States to conceal the truth about cigarettes, to do everything they could to make sure that the public was confused as to whether cigarettes could harm them and that the public remained confused as to whether cigarettes were addictive. And it's the plaintiff's contention, and I believe we can prove that through the development of evidence available in the United States, Reynolds' employees, perhaps employees of some of the other cigarette manufacturers, documents located in the United States, that sometime in the 1970s, Reynolds and the other American conspirators went international and exercised their ability to control their licensees, their subsidiaries, their agents in the other countries, so that those parties in the other countries would toe the line of the American conspiracy. So while there is some involvement of Fortune Tobacco in this, the real center of gravity of the conspiracy is here. I don't mean in Washington State, but it's here in the United States. And so that's where the bulk of the proof is going to come from in this case. It's going to come from the United States. It's going to come from the Reynolds documents that have not gone on the websites that Reynolds identifies. Those are only domestic documents that have gone on there. So we need to discover those documents. And Reynolds has them somewhere, and they're subject to their control. I submit that Fortune Tobacco is probably subject to its control as well, and if they need documents or we need documents from Fortune Tobacco, I think Reynolds can likely get them. I have a very short amount of time, and I wanted to briefly touch on foreign nonconvenience. This, again, is a very case-specific analysis. It has to be done on a case-by-case analysis. It is of no consequence that Reynolds cites a long litany of cases that found the Philippines to be an adequate forum. In this case, the trial court looked at evidence consisting of U.S. State Department of Country reports for two years, which indicated that over 30 percent of judge shifts in the Philippines are vacancy, that there are extraordinary delays. Putting us somewhat in the situation of the United States, correct? However, the district court also found that in the Western District of Washington, there is no delay. Now, Mr. Twazin also testified in his deposition as a practicing attorney in the Philippines that some cases took 30 years or more to resolve. At one point, he said in his deposition, sometimes the case starts and it isn't finished before the people's lives end. Was there – what was the contrary evidence, if any, with respect to the Philippines being an adequate forum? There was an affidavit from – From that attorney? Former judge? He's a former justice. Justice. And he made a declaration. He did not address the issue of delay or corruption or vacancies on the bench. He did mention something interesting that I found last night as I was reading his declaration, and this is at ER 021, paragraph 22, where he states that products liability and or personal injury action, such as the one presented, can be brought in a Philippine court and will be heard by a judge. And it struck me when I read that, that by itself may make the Philippines an inadequate forum. Is it constitutional right to a trial by jury of these claims in the United States? I think that's a stretch, because by that, virtually no country in the world except the United States has juries in civil matters. And to adopt a rule like that would, it seems to me, impugn sovereignty of other countries and suggest that no other country, even those with highly developed judicial systems, would provide an adequate forum. So I moved on it, that it may be a stretch. As I said, I saw it last night, and it just occurred to me as a thought that perhaps that's... Maybe a passing thought. Maybe a passing thought. That's something we would look at. But in any event, the declaration of the former justice did not address corruption, did not address delay, did not address the factors that plaintiff put forward before the district court. My time has expired. Thank you. May it please the Court, just a few points. On the question of documents located in the United States, Mr. Ferguson has pointed out that this is a unique situation in that, as a result of the settlement with the State Attorney General's actions, all Reynolds documents produced in any smoking and health litigation, including the recent one-year-long U.S. Department of Justice RICO lawsuit, are on a website. I think, at last count, about six million pages of documents accessible anywhere in the world. In terms of Fortune Tobacco documents, Fortune Tobacco was a licensee of Reynolds that was terminated six years ago. So I'm not sure on what basis Reynolds would necessarily be able to get their documents. Yes, Reynolds gets substantial benefits in the State of Washington from sales, and it has an agent for service in the State of Washington. But there are a number of cases that say you only consent to constitutionally permissible jurisdiction. We don't consent to constitutionally impermissible jurisdiction. Let me read what Reynolds said in the district court about the conditional dismissal. Reynolds said in his reply brief, and this is in the excerpt of the record at 27, the decision to impose conditions to a forum nonconvenience dismissal, including an agreement to submit to the jurisdiction of the alternative forum, is entirely within the discretion of the district court. And then it's cited in a footnote. Should the court determine that a conditional dismissal is appropriate here, it should not require Reynolds to waive all defenses, including limitations-related defenses, that were available at the time plan's original file. That excerpt you're reading from is your appellate brief or it's the brief in the district  court. The reply brief in the district court. In the district court. Thank you. One point about the Crow's test, it raises an interesting point, because the Crow's decision was decided in 1977, and it talked about the dangerous, the foreseeability of danger from a product. Well, three years later, 1980, in the World Wide Volkswagen case, the Supreme Court of the United States said that's not a permissible jurisdiction consideration. Again, the district court was really looking, I believe, at the wrong cases. I believe my time is up. I have one more point, if there's time. Okay. On the adequacy of the Philippines, we have here not only 10 or 12 decisions of other courts, including a couple of this Court, but we have an affidavit in the record from a retired justice of the Philippine Court of Appeals, who is also a former law school dean in the Philippines, declaring that Mr. Tuazon would have an adequate case in the Philippines and his claims would be fairly heard. In comparison, we have Mr. Tuazon's somewhat self-serving statements in the record. And we have his own statement, frankly, that he personally received justice in his own personal litigation in the Philippines. So it just seems like an unreasonable weighing of the evidence to conclude that the Philippines are not an adequate alternative for him. Thank you. The case of Tuazon v. Reynolds is submitted. I thank both counsel for your arguments this morning. They're very helpful.
judges: Cudahy , T.G. Nelson, McKeown